UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROBERT JEREMY HORTON, Individually and on
Behalf of All Others Similarly Situated

Plaintiff,

v.

DOW JONES & COMPANY, INC., d/b/a THE WALL
STREET JOURNAL,

Defendant.

Case No. 1:18-cv-04027-LGS

ECF Case

Electronically filed

---

## MEMORANDUM OF DEFENDANT
## DOW JONES & COMPANY IN SUPPORT OF ITS RENEWED
## <u>MOTION TO STAY AND COMPEL ARBITRATION</u>

Sandra D. Hauser
DENTONS US LLP
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 768-6700
Fax: (212) 768-6800
sandra.hauser@dentons.com

Natalie J. Spears, *pro hac vice*
Kristen C. Rodriguez, *pro hac vice*
DENTONS US LLP
233 S. Wacker Drive, Suite 5900
Chicago, IL 60606-6404
Tel:  (312) 876-8000
Fax:  (312) 876-7934
natalie.spears@dentons.com
kristen.rodriguez@dentons.com

*Counsel for Defendant
Dow Jones & Company, Inc.*

## <u>TABLE OF CONTENTS</u>

**Page**

FACTUAL BACKGROUND ....................................................................................................2

ARGUMENT ........................................................................................................................6

I.  PLAINTIFF AGREED TO THE SUBSCRIBER AGREEMENT, WHICH
    INCLUDES AN AGREEMENT TO ARBITRATE AND GIVE UP
    CLASS-ACTION PARTICIPATION. ...............................................................................8

II.  THE AGREEMENT TO ARBITRATE IS VALID AND
     ENFORCEABLE. ........................................................................................................11

    A.  The Agreement to Arbitrate Is Not Procedurally Unconscionable. ......................12

    B.  The Agreement to Arbitrate Is Not Substantively Unconscionable .....................14

III.  THE AGREEMENT TO ARBITRATE ENCOMPASSES PLAINTIFF'S
      CLAIM. ....................................................................................................................16

CONCLUSION ...................................................................................................................18

## TABLE OF AUTHORITIES

**Cases**                                                       **Page(s)**

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)........................................................................................1, 6

*Anonymous v. JP Morgan Chase & Co.*,
No. 05-cv-2442, 2005 WL 2861589 (S.D.N.Y. Oct. 31, 2005)..............................13

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)....................................................................................6, 13, 15

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
No. 17-cv-4570, 2017 WL 7309893 (S.D.N.Y. Nov. 20, 2017), *adopted as
modified*, 2018 WL 671258 (S.D.N.Y. Jan. 31, 2018) .....................9, 12, 13, 15, 17

*Cap Gemini Ernst & Young U.S. LLC v. Nackel*,
No. 02-cv-6872, 2004 WL 569554 (S.D.N.Y. Mar. 23, 2004)................................11

*Carr v. Credit One Bank*,
No. 15-cv-6663, 2015 WL 9077314 (S.D.N.Y. Dec. 16, 2015) ..................11, 13, 14

*Dallas Aerospace, Inc. v. CIS Air Corp.*,
352 F.3d 775 (2d Cir. 2003)........................................................................12

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)....................................................................................16

*Doctor's Assocs., Inc. v. Distajo*,
107 F.3d 126 (2d Cir. 1997)........................................................................7, 16

*Epic Systems v. Lewis*,
138 S.Ct. 1612 (2018)..................................................................................1, 15

*Fteja v. Facebook, Inc.*,
841 F. Supp. 2d 829 (S.D.N.Y. 2012)..........................................................10

*Harrington v. Atl. Sounding Co., Inc.*,
602 F.3d 113 (2d Cir. 2010)........................................................................7

*Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*,
246 F.3d 219 (2d Cir. 2001)........................................................................16

*Isaacs v. OCE Bus. Servs., Inc.*,
968 F. Supp. 2d 564 (S.D.N.Y. 2013)..........................................................14

*Klos v. Lotnicze*,
133 F.3d 164 (2d Cir. 1997)........................................................................12

*Lapina v. Men Women N.Y. Model Mgmt.*,
    86 F.Supp.3d 277 (S.D.N.Y. 2015) ................................................................17

*Lewis Tree Serv. v. Lucent Techs.*,
    239 F. Supp. 2d 322 (S.D.N.Y. 2002).............................................................11

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*,
    252 F.3d 218 (2d Cir. 2001).............................................................................16

*Meyer v. Uber Tech., Inc.*,
    868 F.3d 66 (2d Cir. 2017)...........................................................1, 8, 9, 10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ..............................................................................................6

*Nayal v. HIP Network Servs. IPA, Inc.*,
    620 F. Supp. 2d 566 (S.D.N.Y. 2009).............................................................13

*Oppenheimer & Co., Inc. v. Neidhardt*,
    56 F.3d 352 (2d Cir. 1995)................................................................................7

*Plazza v. Airbnb, Inc.*,
    289 F. Supp. 3d 537 (S.D.N.Y. 2018)...........................................................9, 15

*Ragone v. Atl. Video at Manhattan Ctr.*,
    595 F.3d 115 (2d Cir. 2010)....................................................10, 11, 13, 14

*Sablosky v. Edward S. Gordon Co.*,
    73 N.Y.2d 133 (1989) ....................................................................................12

*Starke v. Gilt Groupe, Inc.*,
    No. 13-cv-5497, 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014) ....................9, 10, 14

*Thomas v. Public Storage, Inc.*,
    957 F. Supp. 2d 496 (S.D.N.Y. 2013)............................................................17

*In re Whitehaven S.F., LLC v. Spangler*,
    45 F. Supp. 3d 333 (S.D.N.Y. 2014), *aff'd*, 633 F. App'x 544 (2d Cir. 2015)........................7

*Whitt v. Prosper Funding LLC*,
    No. 15-cv-136-GHW, 2015 WL 4254062 (S.D.N.Y. July 14, 2015)........................8

*Zaltz v. JDate*,
    952 F. Supp. 2d 439 (E.D.N.Y. 2013) ............................................................9, 10

**Statutes**

9 U.S.C.
    § 2 ........................................................................................................1, 6, 11
    § 4 ......................................................................................................................7

Michigan's Video Rental Privacy Act ........................................................5, 15, 17

**Other Authorities**

Dow Jones's Subscriber Agreement
    § 10.1 ...........................................................................................5, 14, 16, 17
    § 10.2 ............................................................................................................15
    § 11 ..............................................................................................................11

Am. Arbitration Ass'n, Consumer Arbitration Rules and Supp. Procedures ................................14

Mich. Ct. Rule 3.501(A)(5).........................................................................................15

Defendant Dow Jones & Company, Inc. ("Dow Jones") moves to compel Plaintiff to arbitrate his claim on an individual basis as he agreed to do, and to stay the proceedings in this Court pending such arbitration.

When Plaintiff purchased his subscription to *The Wall Street Journal* from Dow Jones's Wall Street Journal Website (the "WSJ Website") in March 2014, he agreed to Dow Jones's Subscriber Agreement.  He did so by affirmatively clicking on a box reflecting his assent to the statement "You must read and agree to our Subscriber Agreement . . . ."  Without checking that box, Plaintiff could not have completed his purchase.  The Subscriber Agreement was conspicuously rendered as a hyperlink, and its terms included both a broad arbitration agreement extending to "any aspect of the relationship between" Mr. Horton and Dow Jones, and a class-action waiver in boldface type.

Courts "routinely uphold" arbitration agreements contained in online "clickwrap agreements" like the one Plaintiff agreed to here, where a consumer checks a box confirming consent to hyperlinked terms of use.  *Meyer v. Uber Tech., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017).  Under settled law, Plaintiff agreed to be bound by each of the Subscriber Agreement's provisions including the valid and binding agreement to arbitrate.  The terms of the agreement to arbitrate are clear and reasonable, and there can be no dispute Plaintiff's claim in this case "aris[es] out of or relat[es] to" an "aspect of the relationship between" the parties.  *See Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) ("courts must 'rigorously enforce' arbitration agreements according to their terms"); *Epic Systems v. Lewis*, 138 S.Ct. 1612 (2018) (class action waiver enforceable even in employment context); Federal Arbitration Act ("FAA"), 9 U.S.C. § 2.  Plaintiff is therefore required to pursue his claim only in binding arbitration on an individual basis, and is foreclosed from proceeding before this Court.

## FACTUAL BACKGROUND

**Dow Jones's Subscriber Records**

Dow Jones publishes *The Wall Street Journal*; consumers may purchase subscriptions to *The Wall Street Journal* on the WSJ Website.  (Declaration of Colleen Camuccio ("Camuccio Decl.") ¶ 3.)  Dow Jones maintains records in its databases of subscribers' orders to *The Wall Street Journal*, including *inter alia,* dates of purchase, type and format of subscriptions, method by which subscriptions were purchased, and amounts paid.  (*Id*. ¶ 4.)

Dow Jones's database records reflect that Plaintiff ordered a subscription to *The Wall Street Journal* in his name on March 13, 2014.  (*Id*. ¶ 6.)  This 2014 subscription was the only subscription for Plaintiff at either address provided by his counsel that Dow Jones has located in its databases.  (*Id*.)[1]

**Plaintiff's 2014 Subscription to *The Wall Street Journal***

Dow Jones's Mosaic database records confirm that Plaintiff's 2014 subscription was purchased online on the WSJ Website.  (Camuccio Decl. ¶¶ 8-9 and Ex. 1.)  The Mosaic database further reflects that the subscription Plaintiff purchased on March 13, 2014 was a digital and print subscription to *The Wall Street Journal*, and that the subscription was a "12 for 12" deal, which was an offer for 12 weeks of digital access and print delivery for $12.  (*Id*. ¶ 11 and Ex. 1.)

Each subscription purchase on the WSJ Website is associated with a specific tracking code, and each tracking code is associated with only one unique "checkout screen" for the purchase on the WSJ Website.  (*Id*. ¶ 13.)  Through its business records, Dow Jones can

---

[1]  Plaintiff's First Amended Complaint ("FAC") alleges that he subscribed to The Wall Street Journal in 2011; Dow Jones has not located a record of that subscription in its databases.  In any event, Plaintiff's claim, as alleged, is limited to alleged disclosures of subscription information "between May 4, 2015 and July 30, 2016"  (FAC ¶¶ 1, 3, 6, 18, 37, 40-42, 48, 50)—after his 2014 acceptance of the Subscriber Agreement.

therefore identify the specific URL for the checkout screen associated with Plaintiff's account, showing what would have been presented online to Plaintiff when he purchased his 2014 subscription.  (*Id.* ¶¶ 25-27.)  Since that particular URL is no longer active, Dow Jones identified the original, June 2013 test records for that URL.  (*Id.* ¶ 26.)[2]  Exhibit 3 to the Camuccio Declaration is a screenshot reflecting how the WSJ Website checkout page would have appeared to Plaintiff.

**Plaintiff's Consent To Subscriber Agreement Required To Complete His Online Order**

The final section of the checkout page Plaintiff would have encountered has a header titled "SUBSCRIBER AGREEMENT," rendered in large, bold, orange text.  (*See* Camuccio Decl. Ex. 3.)  Before completing a purchase, a consumer had to click the check box under the "SUBSCRIBER AGREEMENT" heading.  (Camuccio Decl. ¶ 20 and Ex. 3.)  As shown below (Fig. 1), the text next to the check box reads: "You must read and agree to our **Subscriber Agreement** and **Privacy Policy**."

*Figure 1:*

(Camuccio Decl. Ex. 3.)

The "SUBSCRIBER AGREEMENT" check box was not prepopulated with a check; it would need to be affirmatively manually checked by the purchaser, and the purchase could not

---

[2] Dow Jones typically tests an online campaign before launching it for quality control purposes; in this instance, the test plan for the URL associated with Plaintiff's subscription was successful, and therefore the campaign went live without any changes.  (*Id.* ¶ 30 and Ex. 5.)

be completed if he or she did not check this box to agree to the Subscriber Agreement and Privacy Policy.  (*Id*. ¶ 21-22.)[3]  It was Dow Jones's practice in March 2014, and has been its consistent practice, to present potential subscribers with an unchecked box in this space, requiring them to check it to confirm acceptance of the Subscriber Agreement terms.  (*Id*. ¶ 22.)

The phrases "Subscriber Agreement" and "Privacy Policy" were conspicuously rendered in orange, underlined text, and were hyperlinked to the then-existing versions of the Subscriber Agreement and Privacy Policy, respectively.  (*Id*. ¶ 23.)  If a consumer clicked on the hyperlinked phrase "Subscriber Agreement," then he or she would be taken to the webpage containing the existing version of the Subscriber Agreement.  (*Id*.)

To complete the order, the consumer then would need to click a large orange button that reads "Complete Purchase," located immediately below the agreement to the Subscriber Agreement and Privacy Policy.  (*Id*. ¶ 24.)  Provided all of the required fields on the checkout page were appropriately filled out by the consumer—and the checkbox under the SUBSCRIBER AGREEMENT affirmatively checked—the consumer would then be taken to another webpage confirming the purchase.  (*Id*.)

**The Subscriber Agreement Terms**

The Subscriber Agreement  in effect as of the date of Plaintiff's subscription order (and which was hyperlinked on the WSJ Website) states as follows:

> If you agree to be bound by the terms of this Agreement, you should check the box indicating your agreement to the terms of this Agreement on the registration page for the Service.  If you do not agree to be bound by the terms of this Agreement, you should not check the box but you will not be able to proceed with the registration process for the respective Service and become a subscriber.

(Declaration of Norman Petty ("Petty Decl."), Ex. 1.)

---

[3]  In the Exhibit 3 screenshot from the launch test, this box is checked because it would have been manually checked by the test user in order to proceed with the purchase.

The Subscriber Agreement also includes, among other things, a valid and binding "Agreement to Arbitrate" with a class-action waiver (Section 10).  The Agreement to Arbitrate provides that, except for certain claims not relevant here,

> any controversy or claim arising out of or relating to this Agreement or any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory, will be resolved by arbitration administered by the American Arbitration Association ("AAA") in accordance with its Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes. . . . **You agree that by entering into this Agreement, you and we are each waiving the right to trial by jury, except as otherwise stated above.  Any arbitration under this Agreement will take place on an individual basis; class arbitrations and class actions are not permitted and, by entering into this Agreement, you are giving up the ability to participate in a class action.**

(Petty Decl., Ex. 1, § 10.1 (boldface in original).)

**Plaintiff Brings This Putative Class Action In Violation of His Agreement to Arbitrate and Class-Action Waiver**

The First Amended Complaint ("FAC") alleges that Plaintiff subscribed to *The Wall Street Journal* (FAC ¶ 45); that Dow Jones sold "information that identifies Plaintiff as having purchased a subscription to *The Wall Street Journal* and/or another of Dow Jones's publications" to third parties, "without obtaining his permission or providing prior notice" (*id*. ¶ 48); and "because he paid money for his subscription, Dow Jones's sale of his Personal Reading Information deprived Plaintiff of the full set of benefits to which he was entitled as a part of his subscriptions to Dow Jones's publications" (*id*. ¶ 53); based on these allegations, Plaintiff asserts a claim for violation of Michigan's Video Rental Privacy Act ("VRPA") (*id.*, p. 15).

The FAC's sole claim is encompassed by the broad terms of the Agreement to Arbitrate "any controversy or claim arising out of or relating to this Agreement or any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory." (Subscriber Agmt., §10.1.)  Notwithstanding his Agreement to arbitrate this

claim on an individual basis, Plaintiff filed this putative class action complaint.

On June 28, 2018, Dow Jones moved, with supporting declarations, to stay and compel arbitration of Plaintiff's original complaint.  (ECF Nos. 27-30.)  The Court gave Plaintiff the opportunity to file an amended complaint in response to the motion to stay and compel arbitration.  (ECF No. 25.)  Plaintiff filed the FAC on July 13, 2018.  (ECF No. 32.)  The FAC adds no allegations that are pertinent to, much less avoid the grounds for, Dow Jones's motion. Instead, the FAC drops Plaintiff's "unjust enrichment" count, and adds an allegation that he also "purchased . . . a subscription to *WSJ Magazine* . . . during the 2011-2014 time frame."  (FAC ¶ 45.)  However, contrary to Plaintiff's representation, Dow Jones has *never offered* either a print or digital stand-alone subscription to *WSJ. Magazine*.  (Declaration of Maxine Tiger, ¶ 3.) Rather, it has been a free insert distributed periodically with the print version of *The Wall Street Journal*.  (*Id.*)

Dow Jones now renews its motion as the Court contemplated.  (ECF No. 25.)

## ARGUMENT

Under the FAA, a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The Supreme Court's precedents "place it beyond dispute that the FAA was designed to promote arbitration.  They have repeatedly described the Act as embodying a national policy favoring arbitration, and a liberal federal policy favoring arbitration agreements . . . ." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345-46 (2011) (citation omitted). "[C]onsistent with [the] text [of the FAA], courts must 'rigorously enforce' arbitration agreements according to their terms," *Italian Colors*, 570 U.S. at 233, and "questions of

arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

Once the party moving to compel arbitration makes a *prima facie* showing that an agreement to arbitrate exists, the burden shifts to the party resisting arbitration to show (i) that he or she did not agree to the arbitration provision, or that the arbitration provision is otherwise invalid or unenforceable, or (ii) that the arbitration provision does not encompass his or her claims. *See In re Whitehaven S.F., LLC v. Spangler*, 45 F. Supp. 3d 333, 342-43 (S.D.N.Y. 2014), *aff'd*, 633 F. App'x 544 (2d Cir. 2015) ("Whether it argues that arbitration is improper because 'the arbitration agreement is invalid under a defense to contract formation,' or asserts that 'the arbitration contract does not encompass the claims at issue,' either way, the resisting party shoulders the burden of proving its defense."); *Harrington v. Atl. Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010) (party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid") (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000)).

On a motion to compel arbitration such as this, the Court applies a summary judgment standard to those questions, under which the party resisting arbitration must prove that there is a genuine issue of material fact. *See Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 129-30 (2d Cir. 1997); 9 U.S.C. § 4. "[T]he party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Oppenheimer & Co., Inc. v. Neidhardt,* 56 F.3d 352, 358 (2d Cir. 1995).

Plaintiff cannot meet his burden. There is no genuine question of fact as to whether Plaintiff bound himself to the Agreement to Arbitrate (he did) (*see* Section I), whether the Agreement to Arbitrate is valid and enforceable (it is) (*see* Section II), or whether Plaintiff's

claim falls within its scope (it does) (*see* Section III).  Hence, Plaintiff's claim against Dow Jones must be resolved through arbitration, and this action stayed pending such resolution.

I.     **PLAINTIFF AGREED TO THE SUBSCRIBER AGREEMENT, WHICH INCLUDES AN AGREEMENT TO ARBITRATE AND GIVE UP CLASS-ACTION PARTICIPATION.**

Plaintiff's claim rests on his purchase of a subscription to *The Wall Street Journal*.  He purchased that subscription through Dow Jones's WSJ Website.  In order to complete that purchase, he had to agree to be bound by the terms of Dow Jones's Subscriber Agreement and Privacy Policy by checking a box located immediately next to text that stated: "You must read and agree to our **Subscriber Agreement** and **Privacy Policy**."  (*See* Camuccio Decl. ¶¶ 20-21 and  Ex. 3.)  The terms "Subscriber Agreement" and "Privacy Policy" in the text adjacent to the check box were conspicuously rendered as hyperlinks to the then-existing versions of the Subscriber Agreement and Privacy Policy.  The check box and adjacent text appeared under a header titled "SUBSCRIBER AGREEMENT" and immediately above the "Complete Purchase" button.

Under settled law in the Second Circuit (and elsewhere), Plaintiff agreed to be bound by each of the provisions in the Subscriber Agreement when he completed his transaction.  "[A] 'clickwrap' (or 'click-through') agreement"—like the one Plaintiff agreed to here —"require[s] users to click an 'I agree' box after being presented with a list of terms and conditions of use." *Meyer v. Uber Tech., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017). "Courts routinely uphold clickwrap agreements for the principal reason that the user has affirmatively assented to the terms of agreement by clicking 'I agree.'" *Id.* (citing *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 837 (S.D.N.Y. 2012)).

Plaintiff affirmatively checked the box requiring him to acknowledge that he "must read and agree to our **Subscriber Agreement** and **Privacy Policy**"; that "clickwrap" agreement is

valid and enforceable as a matter of law.  *Meyer,* 868 F.3d at 75; *Whitt v. Prosper Funding LLC,*

No. 15-cv-136-GHW, 2015 WL 4254062, at *1, *4 (S.D.N.Y. July 14, 2015) (enforcing

agreement to arbitrate contained in borrower registration agreement when borrower was required

to click a box adjacent to text that stated "Clicking the box below constitutes your acceptance . . .

of the borrower registration agreement"; the borrower registration agreement was "conspicuously

rendered as a hyperlink to the Agreement itself" and borrower "could not complete a loan

application without clicking the box indicating acceptance of the Agreement"); *Zaltz v. JDate,*

952 F. Supp. 2d 439, 451 (E.D.N.Y. 2013) (plaintiff accepted terms of agreement where it was

"clear that in order to have obtained a JDate.com account . . . plaintiff clicked the box confirming

that she had both read and agreed to the website's Terms and Conditions of Service . . . even

though she does not recall the specific terms at this time").

　　　　Indeed, the Second Circuit in *Meyer* recently upheld the validity of a "sign-in-wrap"

agreement and enforced an arbitration provision in Uber's Terms of Service where Uber's

website did *not* have a "check-the-box" click through, but simply stated that by creating an

account, the user agreed to its Terms of Service, a hyperlink which appeared below the

registration button.  *Meyer*, 868 F.3d at 78-80 (vacating denial of motion to compel arbitration,

holding "a reasonably prudent smartphone user would understand that the terms were connected

to the creation of a user account" and "would know that by clicking the registration button, he

was agreeing to the terms and conditions accessible via the hyperlink, whether he clicked on the

hyperlink or not").[4]

---

[4] *Accord Bernardino v. Barnes & Noble Booksellers, Inc.*, No. 17-cv-4570, 2017 WL 7309893, at *11
(S.D.N.Y. Nov. 20, 2017), *adopted as modified*, 2018 WL 671258 (S.D.N.Y. Jan. 31, 2018) (enforcing
arbitration provision in terms of use hyperlinked "during the checkout process for purchasing a product"
and compelling arbitration of alleged privacy claims; Plaintiff "was explicitly told that by submitting her
order she was manifesting assent to the TOU . . . just as in *Meyer*, Bernardino's assent to the arbitration
provision was unambiguous"); *Plazza v. Airbnb, Inc.,* 289 F. Supp. 3d 537, 552 (S.D.N.Y. 2018)

Thus, under *Meyer*, even if Plaintiff had *not* been required to check a box acknowledging that he "must read and agree to our **Subscriber Agreement** and **Privacy Policy**," both that text and the conspicuous hyperlink to the Subscription Agreement immediately above the "Complete Purchase" button informed Plaintiff that completing the purchase constituted acceptance of the Subscriber Agreement.  He "was informed of the consequences of his assenting click and he was shown, immediately below, where to click to understand those consequences.  That was enough." *Fteja*, 841 F. Supp. 2d at 840.  But again, in fact, the WSJ Website's interface required Plaintiff to "'click' to denote h[is] acceptance" of the Subscriber Agreement—not once but  "*twice*":  he had to (1) "check the box" confirming that he "read and agreed to" the Subscriber Agreement; *and* (2) click the "Complete Purchase" button (immediately below the hyperlink to the Agreement).  *Zaltz*, 952 F. Supp. 2d at 454 (italics in original).  Either would be sufficient to manifest assent under controlling law.

Equally clear, whether or not Plaintiff actually read the Subscriber Agreement is "irrelevant."  *Fteja*, 841 F. Supp. 2d at 839 ("Whether or not the customer bothers to [read the relevant provisions] is irrelevant.  'Failure to read a contract before agreeing to its terms does not relieve a party of its obligations under the contract.'") (quoting *Centrifugal Force, Inc. v. Softnet Commc'n Inc.*, No. 08-cv-5463, 2011 WL 744732, at *7 (S.D.N.Y. Mar. 1, 2011)).[5]

---

(enforcing arbitration agreement even though sign-up procedure "was not a classic clickwrap in the sense that the terms were presented by hyperlink instead of being shown to the user and there was no clear button affirmatively stating 'I accept'"); *see also Starke v. Gilt Groupe, Inc.*, No. 13-cv-5497, 2014 WL 1652225, at *3 (S.D.N.Y. Apr. 24, 2014).

[5] *See also Starke*, 2014 WL 1652225, at *3 ("Regardless of whether he actually read the contract's terms, [plaintiff] was directed exactly where to click in order to review those terms, and his decision to click the 'Shop Now' button represents his assent to them."); *see also Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 122 (2d Cir. 2010) ("Ragone asserts that she did not read the arbitration agreement before signing it.  But this is of no moment in light of this Court's holding that it 'cannot accept a rule that would allow a party to avoid his legal obligation to read a document carefully before signing it just because the document is an arbitration agreement under which [certain federal] claims could be arbitrated.'").

Dow Jones has made its *prima facie* showing that an agreement to arbitrate exists and there are no evidentiary facts Plaintiff could adduce to rebut that showing.

## II.      THE AGREEMENT TO ARBITRATE IS VALID AND ENFORCEABLE.

The Agreement to Arbitrate must be enforced because no "grounds . . . exist at law or in equity for the revocation of [the] contract." 9 U.S.C. § 2.  Any attempt by Plaintiff to argue that the Agreement is unenforceable on "unconscionability" grounds would be entirely without merit.

The Subscriber Agreement is governed by "[t]he laws of the State of New York . . . , without regard to any conflict or choice of law principles." (Subscriber Agmt., § 11.)[6]  Under New York law, a contract is unconscionable only when it is "so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms. . . ."  *Ragone v. Alt. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010) (alteration omitted) (quoting *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10 (1988)).  "[A] determination of unconscionability generally requires a showing that the contract was *both* procedurally and substantively unconscionable . . . ." *Carr v. Credit One Bank*, No. 15-cv-6663, 2015 WL 9077314, at *3 (S.D.N.Y. Dec. 16, 2015) (emphasis added).  "The procedural element . . . concerns the contract formation process and the alleged lack of meaningful choice; the substantive element looks to the content of the contract . . . ." *Ragone*, 595 F.3d at 121-22.

---

[6] "Both federal and New York State choice of law rules require that such contractual choice of law provisions be honored, provided that there is some relationship between the law chosen and the transaction." *Lewis Tree Serv. v. Lucent Techs.*, 239 F. Supp. 2d 322, 327 (S.D.N.Y. 2002).  Plaintiff's own allegations establish that Dow Jones has a substantial relationship to New York: Dow Jones's "headquarters and principal place of business [is] at 1211 Avenue of the Americas New York, New York 10036." (FAC  ¶ 9.)  *See Cap Gemini Ernst & Young U.S. LLC v. Nackel*, No. 02-cv-6872, 2004 WL 569554, at *4 (S.D.N.Y. Mar. 23, 2004) (enforcing choice-of-law provision selecting New York law where defendant's headquarters and principal place of business were in New York).

Plaintiff cannot show that the Agreement to Arbitrate is either procedurally or substantively unconscionable—and it must be both in order for him to escape its enforcement.

## A.    The Agreement to Arbitrate Is Not Procedurally Unconscionable.

The factors relevant to a determination of whether the process of entering into a contract was procedurally unconscionable are "(1) the size and commercial setting of the transaction; (2) whether there was a 'lack of meaningful choice' by the party claiming unconscionability; (3) the 'experience and education of the party claiming unconscionability;' and (4) whether there was 'disparity in bargaining power.'" *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 787 (2d Cir. 2003) (quoting *Gillman*, 73 N.Y.2d at 10-11). "[C]laim[s] that the contract is one of adhesion or that it results from procedural unconscionability . . . are judged by whether the party seeking to enforce the contract has used high pressure tactics or deceptive language in the contract and whether there is inequality of bargaining power between the parties." *Sablosky v. Edward S. Gordon Co.*, 73 N.Y.2d 133, 139 (1989); *see Klos v. Lotnicze*, 133 F.3d 164, 168 (2d Cir. 1997) ("[The concept of adhesion contracts] may not be invoked to trump the clear language of the agreement unless there is a disturbing showing of unfairness, undue oppression, or unconscionability.") (citing *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 593 (1991)).

Plaintiff does not, and could not, allege facts supporting a claim of procedural unconscionability under *any* of the relevant factors:

- The purchase of a $12 *Wall Street Journal* subscription (Camuccio Decl. ¶ 11) is clearly not a "sizable transaction," and Plaintiff cannot argue otherwise. *Bernardino v. Barnes & Noble*, No. 17-cv-4570, 2017 WL 7309893, at *12 (S.D.N.Y. Nov. 20, 2018) *adopted as modified*, 2018 WL 671258 (S.D.N.Y. Jan. 31, 2018) (citing *Edwards v. Macy's, Inc.*, No.

14-cv-8616, 2015 WL 4104718, at *8 (S.D.N.Y. June 30, 2015) (enforcing arbitration provision in credit card agreement based in part on fact that transaction was "modest" one)).

- Nor can there be any suggestion that Plaintiff had no "meaningful choice" but to agree to the Subscriber Agreement;  in this day and age, consumers have access to a plethora of news sources, some of which require no subscription all.  *E.g.*, *Bernardino*, 2017 WL 7309893, at *12 (plaintiff "had other options for obtaining videos, including downloading and streaming"); *Anonymous v. JP Morgan Chase & Co.*, No. 05-cv-2442, 2005 WL 2861589, at *6 (S.D.N.Y. Oct. 31, 2005) (that credit card agreement was "offered on a take-it-or-leave-it basis" was "insufficient to render the contract unconscionable, particularly when the plaintiff had the ability to go to other sources of credit").

- Plaintiff does not claim that he lacks "experience and education" (to the contrary, he claims sufficient sophistication to act as an adequate class representative).  (FAC ¶ 58.)  Furthermore, even if Plaintiff had alleged that he "does not have a college degree," that he "has no experience or background in [the relevant] business," or that he "possesses an imperfect grasp of the English language"—and he alleges *none* of those things—that would still be insufficient to establish procedural unconscionability.  *Ragone*, 595 F.3d at 122.  Plaintiff is "a far cry from the prototypical 'uneducated' and 'needy' individual for whom the unconscionability doctrine was fashioned."  *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 573 (S.D.N.Y. 2009) (quoting *Klos*, 133 F.3d at 168).

- Plaintiff cannot allege a "disparity in bargaining power," let alone one sufficient to establish that the Agreement to Arbitrate is procedurally unconscionable.  The fact that an arbitration provision is agreed to between a company and a consumer cannot alone render that provision unconscionable.  *See, e.g.*, *Concepcion*, 563 U.S. at 346-47; *Anonymous*,

2005 WL 2861589, at *7-8.  Instead, "arbitration agreements are enforceable despite an inequality in bargaining power unless coupled with high pressure tactics that coerce agreement."  *Carr*, 2015 WL 9077314, at *3 (quoting *Nayal*, 620 F. Supp. 2d at 572); *see also Ragone*, 595 F.3d at 122.  There is no allegation, and there could be no evidence, of any high pressure tactics by Dow Jones that coerced Plaintiff's agreement to arbitrate.  The Agreement to Arbitrate is not procedurally unconscionable.  That alone forecloses any unconscionability claim.  *See Carr*, 2015 WL 9077314, at *3.

**B.     The Agreement to Arbitrate Is Not Substantively Unconscionable.**

The Agreement to Arbitrate is not substantively unconscionable.  Plaintiff cannot show that it "is so grossly unreasonable as to be unenforceable according to its literal terms and those contract terms are unreasonably favorable to the party seeking to enforce the contract." *Isaacs v. OCE Bus. Servs., Inc.*, 968 F. Supp. 2d 564, 569 (S.D.N.Y. 2013).  That also independently bars any unconscionability argument.

The terms of the Agreement to Arbitrate do not "unduly favor [Dow Jones].  Arbitration is a common and commercially routine method of resolving disputes.  It is often simpler and less expensive than litigation for both plaintiffs and defendants.  No reason appears why [Plaintiff] should be surprised, in making a transaction of this nature, by having to arbitrate a dispute about it." *Starke*, 2014 WL 1652225, at *4.  And indeed, the Agreement to Arbitrate specifies application of the AAA's "Supplementary Procedures for Consumer Related Disputes" (Subscriber Agmt., §10.1), which cap the arbitration fees consumers must pay at $200 and are designed to make arbitration more affordable for consumers.  Am. Arbitration Ass'n, Consumer-

- 14 -

Related Disputes Supp. Procedures, https://www.adr.org/sites/default/files/Consumer-Related%20Disputes%20Supplementary%20Procedures%20Sep%2015%2C%202005.pdf.[7]

The Agreement's substantive even-handedness is further reflected in the fact that the arbitration "will take place *either* in the subscriber's county of principal residence or the County of New York in the State of New York," and for "claims of $10,000 or less, *you can choose* whether you would like arbitration carried out based only on documents submitted to the arbitrator, or by a hearing in person, or by phone."  (Subscriber Agmt., §10.2; emphasis added.) *Cf. Bernardino*, 2017 WL 7309893, at *12 (rejecting argument that arbitration provision was "grossly unreasonable and fundamentally unfair" even though, *inter alia,* defendant alone "retain[ed] the right under the provision to bring suit in court" and arbitration could not be conducted "in-person").

Certainly, the Agreement's provision waiving class treatment does not render it unenforceable; to the contrary, as the Supreme Court recently confirmed, such an agreement is enforceable even in the employment context.  *Epic Systems v. Lewis*, 138 S.Ct. 1612, 1621, 1623 (2018) (FAA protects "pretty absolutely" parties' "intention to use individualized rather than class or collective action procedures"; "an argument that a contract is unenforceable just because it requires bilateral arbitration . . . impermissibly disfavors arbitration whether it sounds in illegality or unconscionability") (citing *Concepcion*, 563 U.S. 333)).  *See also Plazza v. Airbnb, Inc.,* 289 F. Supp. 3d 537, 559 (S.D.N.Y. 2018) ("finding Airbnb's arbitration clause

---

[7]  The Supplementary Procedures were "amended and renamed the Consumer Arbitration Rules," effective September 1, 2014 and those Rules apply when the parties "have specified that the Supplementary Procedures for Consumer-Related Disputes shall apply."  Am. Arbitration Ass'n, Consumer Arbitration Rules, R-1(a)(2), https://www.adr.org/sites/default/files/Consumer%20Rules.pdf.

substantively unconscionable essentially because it contains a class action waiver would contravene the intent of *Concepcion*").[8]

In short, the Agreement to Arbitrate is fair and reasonable on its face. Any attempt by Plaintiff to claim "unconscionability" is baseless as a matter of law and would simply rely on the long-rejected view that arbitration should be disparaged as second-class adjudication. There is a "strong federal policy favoring arbitration," *Distajo*, 107 F.3d at 130, and no unconscionability argument can overcome that policy.

## III.    THE AGREEMENT TO ARBITRATE ENCOMPASSES PLAINTIFF'S CLAIM.

Because the Agreement to Arbitrate was assented to by Plaintiff (*see* Section I), and is valid and enforceable (*see* Section II), arbitration should be compelled, and this matter stayed, so long as the parties' dispute falls within the scope of the Agreement to Arbitrate. *See Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001). Clearly, it does.

The Agreement to Arbitrate broadly and unambiguously requires the parties to arbitrate "any controversy or claim arising out of or relating to this Agreement or any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory." (Subscriber Agmt., § 10.1.) Where, as here, the arbitration clause is broad, there is a "presumption of arbitrability." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001) (quoting *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 23 (2d Cir. 1995)). "[T]he [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to

---

[8] Indeed, there could be no substantive unconscionability issue here, where Plaintiff is barred from even bringing his Michigan VRPA claim on a class basis in Michigan state court under Michigan law, which precludes class actions where, as here, the plaintiff seeks recovery of a statutory minimum. *See* Mich. Ct. Rule 3.501(A)(5).

proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (italics in original).

In the FAC, Plaintiff claims that he "purchas[ed] a subscription to Dow Jones publications" (FAC ¶ 63)[9]; that Dow Jones sold its subscriber lists to third parties (*id.* ¶¶ 65-69); and that this "deprived Plaintiff and the Class members of the full value of their paid-for subscriptions" (*id.* ¶ 78), in violation of the VRPA.  On its face, the Agreement to Arbitrate covers Plaintiff's claim, which "aris[es] out of or relat[es] to" Plaintiff's subscription to *The Wall Street Journal* "or any aspect of the relationship between us."  (Subscriber Agmt., § 10.1.)

The Agreement to Arbitrate further specifically stipulates that its broad scope encompasses all claims "whether based in contract, tort, statute  . . . or any other legal theory." (Subscriber Agmt., § 10.1.)  "[A]rbitration clauses may cover statutory claims even if the 'clause at issue does not mention [the specific] statutes or statutes in general.'" *Thomas v. Public Storage, Inc.,* 957 F. Supp. 2d 496, 500 (S.D.N.Y. 2013) (compelling arbitration of discrimination claims under federal and state statutes) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 615 (1985)); *Bernardino*, 2017 WL 7309893, at *1-2 (compelling arbitration of claims under federal Video Privacy Protection Act and New York Video Consumer Privacy Act); *Lapina v. Men Women N.Y. Model Mgmt.*, 86 F.Supp.3d 277, 285 (S.D.N.Y. 2015) (both "statutory and common law claims plainly constitute disputes between the parties, and thus fall within the scope of the arbitration clause").

Plaintiff raised at the status hearing before this Court that he believes he subscribed to *The Wall Street Journal* in 2011, and therefore any purported disclosures of a 2011 subscription

---

[9]   Again, the only "Dow Jones publication" to which Plaintiff subscribed is *The Wall Street Journal*; the reference in his amended complaint to a "subscription" to "WSJ Magazine" (FAC ¶ 45) is false, as *WSJ. Magazine* was never offered as a stand-alone subscription.  (Tiger Decl., ¶ 3.)

would not be subject to arbitration.  That is flatly wrong.  The FAC is explicitly limited to

purported disclosures in violation of the VRPA "between May 4, 2015 and July 30, 2016" (FAC.

¶¶ 1, 3, 6, 18, 37, 40-42, 48, 50); and Plaintiff asserts that the claim "accrued . . . at the time Dow

Jones committed its violations of the VRPA between May 4, 2015 and July 30, 2016" (*id.* ¶ 83).

Accordingly, by Plaintiff's own pleading, the 2011 subscription he alleges (of which Dow Jones

has found no record) is irrelevant because the claim asserted is subject to the 2014 Subscriber

Agreement.  Any claim involving a purported 2011 subscription would in all events be subject to

the 2014 Agreement, which broadly encompasses "***any aspect of the relationship between us***,"

with no temporal limitation.

## CONCLUSION

Dow Jones respectfully requests that the Court grant its motion to stay these proceedings

and compel Plaintiff to arbitrate the claim asserted in the FAC on an individual basis as he

agreed to do.

Dated:  August 10, 2018

Respectfully Submitted,

By:   /s/ Sandra D. Hauser

Sandra D. Hauser
DENTONS US LLP
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 768-6700
Fax: (212) 768-6800
sandra.hauser@dentons.com

Natalie J. Spears, *pro hac vice*
Kristen C. Rodriguez, *pro hac vice*
DENTONS US LLP
233 S. Wacker Drive, Suite 5900
Chicago, IL 60606-6404
Tel:  (312) 876-8000
Fax:  (312) 876-7934
natalie.spears@dentons.com
kristen.rodriguez@dentons.com

*Counsel for Defendant*
*Dow Jones & Company, Inc.*

108732957